versus Wormuth. Counsel for appellant please proceed. Thank you. May it please the court good morning my name is Mateo Caballero and I represent plaintiff appellant Stephen Crowe in the case. With the court's permission I would like to reserve five minutes for rebuttal. All right counsel the time shown on the clock is your total time remaining. Okay thank you your honor. Plaintiff appellant Stephen Crowe is a bisexual disabled veteran with multiple tours of service in the Middle East. With an otherwise unblemished public service career of seven years he was terminated from his federal job as a police officer at the Tripler Army Medical Center based on a fishing expedition conducted by fellow officer Kevin Oda. Oda had called plaintiff anti-gay slurs namely and with apologies to the court and the audience fag and faggot on multiple occasions prior to the conduct to conducting this investigation. In fact said investigation was conducted just two months after plaintiff had complained to the leadership at the provost marshal office about Oda's slurs. But counsel the investigation was done by is it Chao? But but the decision to terminate was made by someone other than him right? Yes the decision to terminate was made by someone else. Oda is the investigator that you're complaining about. Yes. And so but but he was directed in the investigation specifically as to whom to interview correct? Well your honor we don't know exactly what happened in terms of why he interviewed all these people. The initial allegations against plaintiff here were that he had unprofessional conduct towards a single person and then that all of a sudden entailed interviewing a bunch of other people were not witnesses to that original allegation. And what we maintain your honor here is that Oda played definitely played a role on the investigation and influenced that investigation. So under these court's cases specifically the case Dominguez Caribbean Nevada Transportation Department the question is whether Oda's animus and here there is sufficient evidence of animus on the part of Oda who called plaintiff again those slurs on Oda's animus influenced the investigation and ultimately influenced the decision making. What evidence is there of that? Because you know the it seems the army had the investigation uncovered some misconduct on your client's part and the army decided that was the basis that they claim that was the basis for the termination and your argument is that well Oda had this this animus and that's what sort of produced all this but what is the evidence of that? Well the evidence that the Oda's animus influenced investigation is threefold. First he didn't focus again on the allegations at hand which were that single instance of a professional conduct against someone but instead he interviewed a bunch of other people and he was the one who was asking these questions of those witnesses. Is that unreasonable I mean once you start going down a path of investigating an employee and you speak to different people sometimes you learn new things that you have to follow up on. That is correct but even some of the questions asked here you know there was the initial interview with Mr. Sewell the complainant and then the very next interview he was already asking questions that had nothing to do with investigation such things as have you heard of plaintiff having sex at work and at that point there was no evidence that plaintiff was in fact having sex at work so I think there are questions about how the investigation was conducted but it's not just the scope of the investigation that we argue Oda had influence over it's also in terms of how you know the type of evidence that was was used because even though plaintiff here was accused of having sex at work on multiple occasions Oda essentially didn't review camera footage didn't try to in action and people couldn't find him there was no corroborating evidence here about you know when he was having sex at work or I mean even a single instance where he had sex at work making it very difficult for plaintiff to defend himself against these allegations. Counselor, you're disregarding the testimony of the individual who admitted having sex with Mr. Crow at work. Yes, Your Honor, because she recanted the testimony and then only re-recanted her recantation when she was threatened by the U.S. Army with termination so we are arguing, Your Honor, that that second recantation was essentially coerced by the U.S. Army here. Well, wasn't that a decision that had to be made by the ALJ in determining how much credibility to give her statements? Not under Title VII, Your Honor. Under Title VII, plaintiff is entitled to a trial de novo on his discrimination claims. Under the Title V, sure, you know, there is some deference that is given to the ALJ, but on the Title VII claim... That's another procedural point that we have to get to whether or not this was a Title VII case or whether or not this was an appeal from the board. Well, it was both, Your Honor. There was a Title VII. There were the Title VII claims that plaintiff brought here and those are essentially separated into two claims. The pre-termination claim is based on the adverse actions that were taken pre-termination, such as placing him on administrative duty, denying him overtime, and those claims, Your Honor, Mr. Plaintiff couldn't have brought before the MSPB because the MSPB didn't have jurisdiction over such claims. And then you have the wrongful termination claim based on discrimination and retaliation, and that claim, you know, was brought before the MSPB. Those claims were brought before the MSPB and resolved by the ALJ, and those are still Title VII. Go ahead. Well, it seems like what you want to do is separate these two sets of claims, right? You want to say there's termination claims and then there's some other claims. Can you do that under the regulations? Because this is a complicated scheme that we're looking at here, but it seems that these are all related together. These aren't really distinct. It's all the same basic course of conduct that leads to a suspension and then eventually a termination. Not only you're allowed under the regulations, Your Honor, you're required under the regulations. The Merit Systems Protection Board has limited jurisdiction here and can only resolve very specific types of adverse actions, termination being one of them. But for pre-termination claims, each one of those adverse actions has to be analyzed separately. And yes, we, you know, I can see that there is some— What authority are you pointing to for that? Because, is there a case or a part of the regulation that you're referring to? Well, Your Honor, I would argue that it's the scheme of the regulation itself that has mixed-case appeals that go to before the MSPB. And the mixed-case appeal that goes before the MSPB concerns plaintiff's termination. And in those situations, you can bring, as an affirmative defense to the termination, essentially discrimination. But you cannot bring—and the regulations do not allow plaintiff here to go before the MSPB and argue adverse actions over which the agency doesn't have jurisdiction. Counsel, may I ask you for the Title VII claims? Generally, before there is a Title VII cause of action, one must receive a right to sue letter. Was that the case? So, in this case, Your Honor, a plaintiff first went to the agency, filed an EO complaint with the agency, which eventually ended up before the Equal Employment Opportunity Commission. And then he amended that complaint to include the termination once he received the notice of termination. And then he actually—what happened next is he filed an appeal with the MSPB, which dismissed the appeal because it said, look, you have a mixed-case complaint pending before the EEOC, so we don't have jurisdiction, dismissed it. And then the next thing plaintiff did is he filed a motion, unopposed motion, to sever his termination claims from his pre-termination claims before the EEOC. And then after that, he filed with the MSPB a mixed-case appeal. What was pending before the EEOC once he severed his termination claim were his pre-termination claims. And here, the statute is very clear that once—and those claims were never dismissed by the EEOC, by the way. And once those claims languished before the EEOC for 180 days, the statute provides plaintiffs the opportunity to go to district court even without a right to sue letter. It's not by case, Your Honor, it's by statute. And we argue this and we cite the statute in our briefs that essentially once 180 days have passed, it's essentially like a deemed denial that the EEOC hasn't made a decision. And in any event here, Your Honor, if that's the case— Well, Counselor, I think this is an important point. Once the 180 days have passed with no action, then the claimant has the right to request a right to sue letter, but not just to go into court without a right to sue letter, because the right to sue letter is what gives you access to the court. And cases say that pretty plainly. Your Honor, with all due respect, that's not what the statute says. Which statute? Which statute? Which statute? Are you talking about 2000E or are you talking about the board statute? Because the board statute doesn't apply in this scenario when you're trying to assert Title VII claims after going to the EEOC. We're in the 2000E arena, not the board statute. Sure, Your Honor. It's 42 U.S.C. section 2000E-16C, which says, After 180 days from the filing of the initial charge with the department, agency, or unit, an employee or applicant for employment, if aggrieved by the failure to take action on his complaint, may file a civil action as provided in section 2000E-5 of this title. And what does 2000E-5 say? It says that you may file a claim for discrimination or retaliation in district court. It doesn't say anything about a right to sue letter? I don't have it in front of me, Your Honor. I can look at it and in rebuttal address the issue. Can we come back to the MSPB, the mixed case aspect of this, the exhaustion piece? Because it seems that what you want to do is divide the world up into pre-termination and termination. I guess I'm still wondering where you're pointing to in the case law or the regulation that tells us you can do that. Because once there is an adverse employment action, then the MSPB has some amount of jurisdiction. And the question here to me is how far does that extend? And you want to draw the line at pre-termination and termination. The problem is that the case law and the regulation talk more about relatedness or connected to. And here we have a kind of related course of conduct. These aren't really separate. Well, Your Honor, some of them are separate. For example, you have claims for overtime denial. And we would argue those are entirely separate from determination. But in terms of the statute and regulation, you know, 5 CFR section 1201.3A, you know, does make distinctions between mixed case appeals and mixed case complaints. And they're clearly very different types of features. And they're not the same. They're not equivalent. And there is nothing in the MSPB regulation or statute that confers a jurisdiction over adverse actions that are not listed as part of the jurisdiction of the MSPB. So there is no way for plaintiff here, for example, to say that the investigation itself or that his placement on administrative duty was itself discriminatory or retaliatory. They wouldn't be able to make that argument or settle those claims before the MSPB. And if I may just reserve the rest of my time for rebuttal. I see I only have a couple of minutes. All right. Thank you, Counsel. We'll hear from the government. Good morning. May it please the Court. Assistant United States Attorney, Edrick Ching, appearing on behalf of Christine Wormuth, Secretary of the Army. In response to Counsel's argument with regard to the exhaustion matter, the Army relies upon the McAdams case, which really focuses on whether the allegations in the EEO case and the MSPB case are related. At the district court level, Mr. Crow and his counsel did not address this argument. In this case, it is clear that the EEO proceeding and the allegations brought before the MSPB are actually very related. Counsel, why then would the Board say it couldn't hear the case because it had already been brought before the EEO? This is very confusing procedurally. Yes. Why did the Board say that it couldn't hear those claims if they're related? The time hadn't passed? I'm not exactly sure why the Board did that, Your Honor. However, there were— That's very confusing. Well, didn't the Board do it because he had already filed in the EEO? You can't have two cases going in the same place, and the regulation says wherever you file first is where you start with. So the MSPB saw he had this EEO complaint going, and they told him to go pursue that. His response to that was to try to dismiss part of that and then to bring some of this back to the MSPB but to keep some of it parked in front of the EEO, and the question here is can you do that? The problem was still there because he still had claims pending in the EEOC when he came back to the Board. So why would the Board then proceed with those claims if the position was he had already filed with the EEOC? That's really confusing to me. Yes, Your Honor. With regard to this case, there were pre-hearing telephonic conferences. I believe that was attached to our concise statement of facts in which the MSPB administrative law judge, they had a conference and they requested or they discussed what affirmative defenses would be raised, and at that point Mr. Crowe only raised the sexual orientation discrimination. So at that point it was his, you know, he had the opportunity to raise additional affirmative defenses. He chose not to. He abandoned it, and therefore he failed to exhaust his administrative remedies. So what does that mean in terms of the claims that were still pending before the EEOC? Well, I think in this case, per McAdams, he was required to bring all related claims in front of the MSPB, and by not doing so, he therefore waived or abandoned his claim. What's the definition of a related claim? I believe in the McAdams case, Your Honor, with regard to related claims, it's the similar, whether the claims are similar, whether the witnesses would be similar. And in this case, both the claims brought before the EEOC and the MSPB would have involved the removal of Mr. Crowe. But he said he had some claims that did not involve removal. That's the problem, like hostile work environment claims and vacation time, and those were not, those are not the same. Yes, but, Your Honor, this was not raised before at the district court level, but I believe if it was raised, it would have been, it would have involved Captain Ballesteros, and Captain Ballesteros' response to various requests made by Mr. Crowe. So it would have involved the same witnesses, and it would have involved the same set of facts which caused all this, all of his claims with regard to, for example, vacation time and everything. Everything arose out of this investigation. Can I ask the question in a different way? Yes. Is the point that he had to bring the pre-termination claims that Judge Bress was referring to, he had to bring them to the board, and he didn't? Is that the problem here? Yes, Your Honor. Per McAdams, he was required to bring all related claims before the board. He had the opportunity to do so. This was not a case, for example, that he tried to raise it before the administrative law judge, and they denied him. He made the choice not to raise it. And as I understand it, the board originally dismissed because the 120 days hadn't passed while the case was pending. Yes. And so then after that passed, correct me if I'm wrong here, but after that time passed, he tried to bypass the board and go with the other claims to the district court. Is that correct? Yes, yes. He had the opportunity to raise these claims before the MSPB. And he didn't? Yeah, they chose not to, Your Honor. Correct. And that's why this was dismissed for failure to exhaust? Yes. So basically, the Army relies upon McAdams. You know, we acknowledge it's an Eighth Circuit case. At the district court level, Mr. Crow did not address the McAdams case, rather just relied upon the argument by going to the EEOC they exhausted. Can I go back just in this train of thought to a question Judge Rollinson had been asking, which is a question I have, too? So the first time he goes to the MSPB, they essentially, you know, raise the yellow flag and say, wait a minute here, you're already pursuing this in the EEO. You need to do something about that. He comes back to the MSPB, but, of course, he still had something pending in front of the EEO. Did the MSPB know that? Were they aware that there were dual proceedings going on? Because somehow initially they were aware, and they told him you can't bring this in two places at once. Then he goes and basically does it again, and so my question is when he goes back a second time, was the MSPB on notice that he had actually two claims going in two different places? Does the record show anything about this? You know, Your Honor, that's a very good question, but at this point I'm unsure of the answer to that question. But the Army's position is that, you know, at that point, you know, there were conferences held. They were discussed as to what affirmative defenses were going to be brought, you know, with regard to the ALJ proceeding and that the Army, I mean, that Mr. Crow chose not to bring it. And in your view, the pre-termination related claims were also affirmative defenses to the termination? They all sort of rolled up together. Is that your position? Yes, yes, because I believe that Mr. Crow is claiming that some of these claims were actually part of his retaliation claim in relation to him, you know, contacting the EEO counselor or doing protective activity. Counsel, you're relying on the McAdams case, which is an Eighth Circuit case. Is there a Ninth Circuit case that supports your argument that you're making? I could not find any, Your Honor. But with regard to, you know, the Eighth Circuit's, I guess the policy behind it is, you know, if there are going to be two different proceedings and there's going to be the same witnesses and the same claims, I'm assuming that the Eighth Circuit was looking at this and thinking, well, I think it's better to have everything in one forum when everything's related, maybe for efficiency purposes, resources, and also to maybe avoid inconsistent results. But is that consistent with the statute under which the board operates? Yes, and, Your Honor, if the other thing I would like to point out to you is that in Deputy Provost Marshall Ingersbretson's letter or memorandum to Mr. Crow, I believe in the memorandum it gave him three options of how to proceed and option one was proceed to the MSPB, option two was, no, option one was EEO, option two was MSPB, and I believe option three was the Office of Special Counsel for some kind of whistleblower claim, if he had any. So it was made clear to Mr. Crow at that point, right, that he had options, option one, option two, or option three. You know, he wasn't able to proceed in both forums, and especially, Your Honor, in this case, especially when the claims are so interrelated, you know, with the claims being similar with regard to the removal, the witnesses being the same and everything, I think it was required per McAdams of Mr. Crow to proceed to bring all of his claims before the MSPB. Do you agree that the board has limited jurisdiction? Yes, it does have limited jurisdiction, Your Honor, but with regard to the MSPB has jurisdiction with regard to, like for the most part, removal cases. However, per McAdams, you know, if the claims are related, it does have the jurisdiction to consider. Well, the problem is that's an Eighth Circuit case, and so we would have to agree to adopt out-of-circuit precedent to get to that. So that's what concerns me about relying on that case to say simply because they were related they can go before the board when the board is a body of limited jurisdiction. Yes, Your Honor. What is the test for relatedness? I mean, is it the same events? Is it whether the events would be part of the affirmative defense? Because, you know, here, just hypothetically, if he had some completely different issue two years before all of this other stuff, I don't think we would say it's really related. Here the difficulty is temporally and subject matter-wise, it is kind of about the same general course of conduct. Yes, like with regard to the related test, I believe the test would consider whether the same witnesses are going to be called in both cases, whether the claims are actually similar. And in this case, actually the main claim was the removal, and that was actually raised before the EEO and the MSPB. So in this case, like Your Honor just referenced, I believe everything arose out of the removal with regard to his retaliation claim. But didn't he have some other claims, hostile work environment, and some leave, some other issues? Did those all arise out of the same circumstances? Yes, but the hostile work environment was raised, Your Honor, but Mr. Crow did not raise that at the district court level when we brought our motion for summary judgment, and therefore he waived that argument. Your Honor, is it okay if I move on to a different subject matter? That's fine. With regard to one of our arguments is that Mr. Crow did not address numerous arguments made by the Army and the Army's motion for summary judgment at the district court level. There's about seven different arguments that we raised. One of the biggest ones is that with regard to the McDonnell Douglas test, Mr. Crow did not raise any arguments or even challenge the Army's argument that the reasons for the removal and his personnel decisions were legitimate and non-discriminatory. Mr. Crow did not address whether or try to even argue that these reasons were a pretext. In addition, Mr. Crow did not raise any arguments with regard to the applicability of McAdams. Looking at the pleadings with regard to the motion for summary judgment, Mr. Crow did not. He simply argued that Ota was biased. He never argued that his bias, or I'm sorry, he argued that Ota was biased and he controlled the investigation. It's clear in this case that this investigation was not controlled by Officer Ota. Captain Ballesteros was told by his superiors to start an investigation. Captain Ballesteros informed Ota exactly which witnesses to interview. He even gave the questions to interview with regard to his interview with Mr. Sewell. And Officer Ballesteros, or Captain Ballesteros, also interviewed probably the main witness to be interviewed, and that's Mr. Crow, and he had two interviews with him. After Captain Ballesteros made his notice of proposed removal, then Deputy Provost Marshall Inges Breston, he made an independent review similar to Captain Ballesteros, and he affirmed or he adopted the proposal to remove Mr. Crow. Mr. Crow cites some cases with regard to his failure to raise arguments at the district court level. The Polaris Galan case, in that case the claim was made of what was an aggravated felony for deportation purposes. The defendant in that case raised an alternative argument on an existing claim. The Puerta case contained a similar argument but new legal authorities, and in this case it is clear that there's numerous arguments not raised by Mr. Crow at the district court level. Just briefly, Your Honor, I don't have 30 seconds, but Mr. Crow attempts to kind of mishmash the motion for summary judgment and the title, and then the removal portion of the case. For example, at the top of page 8, Mr. Crow argues he has a block paragraph that says that supports his defense of the motion for summary judgment. However, that portion was actually in the Title V briefings. That was not admissible evidence pursuant to Rule 56 and cannot be considered in relation to the motion for summary judgment. And I think I'm done, Your Honor, if you have any more questions of me. It appears not. Thank you, Counsel Rebuttal. Thank you. Thank you, Your Honor. I would just like to address three things about the exhaustion of administrative remedies here. The first one as to the claims, again, there are pre-termination claims, un-termination claims. Both the statute and regulation do not talk about relatedness. Instead, they talk about the type of adverse action over which either the MSPB has jurisdiction or the EEOC or the agency has jurisdiction. So the statute and regulations focus on the type of adverse action, not necessarily on whether they're related or not. That comes from the McAdams case. Could you delineate for us the pre-termination actions that you are asserting in this case? Sure. You have first the investigation itself as an adverse action. Then you have the placement on administrative duty. Then you have the denial of overtime. Then you have the notice of proposed removal. And that's it. Those are the pre-termination adverse actions at issue here. And then, by the way, one of the reasons why the MSPB proceeded the second time Plaintiff filed his case with MSPB is because there are actually guidance under the MSPB saying that what he did was right, that you cannot bring – the MSPB would not – doesn't have jurisdiction over pre-termination claims, so there was no way for him to bring his entire case before the MSPB. Is this guidance they gave him? Is this guidance you're saying they gave him at the time? This is – no. This is just briefing guidance they have on cases like this where there are mixed cases. Is that guidance cited in the brief somewhere? It is not cited in the brief, Your Honor, but it's available, and we can provide it to the court later if the court wants us to. So there was nothing improper about what they did, and that's why it wasn't dismissed. And I know I'm out of time, but the last point I want to make on McAdams very quickly is that there was a mixed-case complaint pending before the EEOC complaint – mixed-case complaint pending before the EEOC when plaintiff in that case filed his mixed-case appeal. Here that wasn't the case. There was a non-mixed-case pending. And as explained in McAdams, and this is a quote, the EEOC regulations provide for the cancellation of a mixed-case complaint if such appeal is timely filed. Here there was no mixed-case complaint pending before the EEOC when plaintiff filed his second appeal. Thank you, Your Honor. Thank you. Thank you to both counsel for your arguments. The case just argued is submitted for decision by the court. The next case on the calendar for argument is USA Panther Corporation v. Imperial Pacific International.
judges: SCHROEDER, RAWLINSON, BRESS